## CUTTING v. CUTTING.
### No. 5321.

District Court of Alaska. Fourth Division. Fairbanks.
Dec. 19, 1946.

Buell A. Nesbett, of Anchorage, and Warren A. Taylor, of Fairbanks, for plaintiff.

John E. Manders, of Anchorage, for defendant.

PRATT, District Judge.

The plaintiff filed his complaint in the above-entitled action on May 31, 1945, praying for a divorce upon the ground of incompatibility of temperament.

In his affidavit for service of summons by publication, made upon the 31st day of May, 1945, the plaintiff stated under oath that the last known address of the defendant was 8804 Orchard Avenue, Los Angeles, California; that plaintiff last received mail from her at that address in June, 1944.

Summons was published in a newspaper and a copy of the complaint mailed to defendant at the above-mentioned address. Whether or not the mailed copy was returned is not shown.

The defendant did not appear. The default of the defendant was entered, and on the 26th of September, 1945, plaintiff filed an affidavit of non-military service, stating as to defendant "that her home is in Los Angeles, California."

A hearing was had before the Court in which the plaintiff, Percy J. Cutting, was asked the following question and made the following answer:

"Q. Where does she reside now?

"A. Los Angeles."

A decree of divorce was entered in favor of plaintiff upon the 26th day of September, 1945.

Upon the 20th day of September, 1946, the defendant, Ruby M. Cutting, filed a motion to vacate and set aside the

decree of divorce. The motion and affidavits supporting the same were served upon plaintiff personally in Anchorage, Alaska, upon the 6th day of September, 1946, an order of Court having theretofore been made in the cause setting said motion for hearing for the 20th day of September, 1946.

The plaintiff filed opposing affidavits and a partial hearing was had upon the 20th day of September, 1946.

The cause was adjourned to November 20, 1946, for the filing of further affidavits by the parties in the cause on or before November 6, 1946.

The cause came on for final hearing upon the 4th day of December, 1946.

The defendant in her affidavit of August 19, 1946, states that "at all times since the year 1939 plaintiff and defendant, together with their three children, have resided at No. 71 Castro Street, Hayward, California, with the exception, however, of the periods of time during which plaintiff was absent therefrom and in the Territory of Alaska. That any and all mail received by defendant from plaintiff since the year 1939, and particularly mail from the Territory of Alaska, has been addressed to defendant and received by her at No. 71 Castro Street, Hayward, California. * * * That defendant did not have any knowledge, information or belief as to the institution or maintenance of the above entitled action for a divorce, or of the decree of divorce rendered therein, until after such decree of divorce had been granted; and that defendant did not reside at any of the times herein mentioned, either previous to or subsequent to the granting of said decree of divorce, at 8804 Orchard Avenue, Los Angeles, California, and defendant further states that she did not receive any copy of summons and complaint in said action, * * * and that plaintiff at all times herein mentioned knew that the address of defendant and his children was 71 Castro Street, Hayward, California."

In his affidavit of September 20, 1946, the plaintiff alleges that in January or February, 1945, the defendant told plain-

tiff he might as well proceed with an action of divorce; that this letter was examined and read by one Audrey Henderson; that in April or May of 1945, plaintiff received another letter from defendant stating that she could be reached at 8804 Orchard Avenue, Los Angeles, California; that the said letter was read to Audrey Henderson, plaintiff's present wife, shortly after the receipt of the same and that it was shown to Warren A. Taylor, plaintiff's attorney in this action; that defendant was residing at said address as it was the home of Charlotte Deane, a sister-in-law of defendant by a prior marriage.

It should be noted that the plaintiff fixes the date of the letter from the defendant giving her address as 8804 Orchard Avenue, Los Angeles, California, at different times. In the affidavit of May 31, 1945, he stated the letter was written in June, 1944, whereas in his affidavit of September 20, 1946, he states the letter was written in April or May of 1945.

The defendant denies ever writing the two letters abovementioned and further states that in 1942 she and Percy J. Cutting were in Los Angeles, and she went to the place where her sister-in-law had lived at 8804 Orchard Avenue, Los Angeles, California, and found that the house that her sister-in-law had lived in had been torn down and an apartment house built in its place and that no one knew of the whereabouts of Charlotte Deane and that she immediately informed the plaintiff of that fact.

In the affidavit of September 20, 1946, plaintiff claimed that a typographical error had been made in his former affidavit, wherein he stated that a letter in June, 1944, had been written to him by defendant giving her address as 8804 Orchard Avenue, Los Angeles, California, and that the true date should be 1945. As the affidavit was made May 31, 1945, it was impossible for him to have received the word from his wife in June, 1945, so it is apparent that the divergence on the subject cannot be attributed to the typographical error mentioned.

In the affidavits of plaintiff and of Audrey Henderson Cutting, of date September 20, 1946, they stated that they visited the defendant in her home in Hayward, California, in April of 1946, at which time she said she knew of the divorce and hoped they would be happy and held no ill feelings toward them.

In the affidavits of the plaintiff and Audrey Henderson Cutting, of date November 5, 1946, each stated that they had interviewed Ruby M. Cutting in California in April of 1946 and that Ruby M. Cutting had stated to plaintiff, "I'll see that your marriage to Audrey Cutting is broken up; you'll never have her as your wife; I'll do everything I can to put you behind the bars".

No such statement was claimed by the plaintiff or Audrey Henderson Cutting in their affidavits made September 20, 1946.

The defendant's attitude toward plaintiff and Audrey Henderson Cutting on July 25, 1946, as shown by her letter to plaintiff and attached to his affidavit of November 5, 1946, negatives the making of the statement above mentioned. Also, the fact that in the affidavit of Percy J. Cutting of date, September 20, 1946, he made no mention of defendant having made such statements, negatives the making of such statements.

Counsel for both plaintiff and defendant understood the Court order for additional affidavits to be filed on or before November 6, 1946, to preclude them from filing further answering affidavits. Thus Percy J. Cutting's affidavit of November 5, 1946, which was served upon the attorney for the defendant November 6, 1946, and filed in the cause November 8, 1946, was not specifically answered by defendant. The affidavit of Ruby M. Cutting of date October 21, 1946, which was served upon the attorney for plaintiff November 6, 1946, and filed in the cause November 7, 1946, was not specifically answered by the plaintiff.

The defendant further states that after plaintiff went to Alaska in 1942, he had made four trips back to Hayward,

California, during all of which trips he resided with her as man and wife at No. 71 Castro Street, Hayward, California, up to and including the 11th day of April, 1946; that plaintiff arrived in California on February 21, 1946, and lived with his wife and children at said 71 Castro Street until April 11, 1946, and during that period plaintiff and defendant made trips to Arcada, Humboldt County, California, to visit her brother, and to Reno, Nevada, to attend the wedding of her daughter; that they took their children with them on the trips, and the plaintiff, Percy J. Cutting registered at the Overland Hotel at Reno, Nevada, as Mr. and Mrs. Cutting and children and occupied the room with defendant; that on April 11 the plaintiff and defendant purchased a house and one-half acre of land in Hayward, California, the deed for which was made to Percy J. Cutting and Ruby M. Cutting, his wife, in joint tenancy (the plaintiff and Audrey Henderson having been married October 12, 1945); that the down payment on the house and lot of $1500 was borrowed on their Studebaker automobile from the Local Loan Company of Oakland, California.

It further states that on July 22, 1946, plaintiff telegraphed her the sum of $270.00, which she acknowledged in her letter of July 25, 1946 (attached to plaintiff's affidavit of November 5, 1946).

If defendant had made the threats against plaintiff and Audrey Henderson Cutting which plaintiff and Audrey Henderson Cutting alleged she made on April 11, 1946, it would be difficult to reconcile them to the sending of the money above-mentioned and the answering letter of Ruby M. Cutting.

The affidavit of Ivah Dillon, of date October 21, 1946, who is a half-sister of the plaintiff, Percy J. Cutting, shows that she saw him frequently during his stay in California between February 21, 1946 and April 11, 1946, and that he was living with Ruby M. Cutting and their children during that time at No. 71 Castro Street, Hayward, California, and that she heard nothing about any divorce between him and

Ruby M. Cutting. She further states that in April, 1946, the plaintiff, Percy J. Cutting, took her to see the new home he and Ruby M. Cutting had purchased and told her "he expected to return to Hayward, California, to remain here permanently."

Plaintiff's attorney, Warren A. Taylor, has filed an affidavit stating that the plaintiff showed him a letter which plaintiff stated was from defendant, Ruby M. Cutting, in which she stated she could be reached at 8804 Orchard Avenue, Los Angeles, California. Mr. Taylor did not claim to be familiar with the writing of Ruby M. Cutting, so that his affidavit is of no material assistance to the plaintiff. In fact, from all of the evidence in the case, it appears to the Court that the defendant wrote no such letter. This letter Mr. Cutting now claims to have lost, as well as another letter alleged to contain the statement by the defendant that he, the plaintiff, should get a divorce.

There are many other matters of dispute between the parties, but the Court believes the statements of the defendant, Ruby M. Cutting, to be accurate and true, and contrary statements to be false.

The defendant, Ruby M. Cutting, did not tender with her motion any answer to the allegations of plaintiff's complaint, and counsel for the plaintiff maintain that the decree cannot be vacated in the absence of such a tendered answer.

They cite two Oregon cases designated immediately hereinafter.

In Mayer v. Mayer, 1895, 27 Or. 133, 39 P. 1002, 1003, a decree of divorce had been rendered on service by publication. The defendant filed a motion "Asking to be relieved from such decree and to be let in to defend the suit. * * *

"But the motion was not to vacate the decree on jurisdictional grounds, but to be let in to defend the suit, and was therefore a waiver of all irregularities in the service of process. * * * The motion in this case did not challenge the decree on jurisdictional grounds alone, but it was a gen-

eral motion, under section 58, Hill's Ann.Laws, to set aside the decree, and for leave to defend; * * *.

" 'A party cannot come into court,' says Brewer, J., in Burdette v. Corgan, supra (26 Kan. 102), 'challenge its proceedings on account of irregularities, and, after being overruled, be heard to say that he never was a party in court, or bound by those proceedings. If he was not in fact a party, and had not been properly served, he can have the proceedings set aside on the ground of want of jurisdiction, but he must challenge the proceedings on that single ground. This is familiar doctrine.' "

In Johnston v. Braymill White Pine Company, 1933, 142 Or. 95, 19 P.2d 93, 95, a motion to set aside the judgment under section 1-907, Oregon Code, 1930, was filed. "* * * Due service of the summons and complaint had been made, and * * * defendant was in default at the time the default and judgment were entered. The record also shows that the circuit court had jurisdiction to enter the judgment."

The court quoted the Mayer v. Mayer case and other decisions and affirmed the circuit court's order denying the motion to open up the default, which motion had not been accompanied by a proposed answer.

In the instant case, the motion filed by the defendant, through her attorney was "for an order vacating and setting aside said Decree of Divorce * * *." It said nothing about being allowed to file an answer. It was signed by John E. Manders, attorney for defendant, residing at Anchorage, Alaska.

The affidavit of the defendant in support of the motion to vacate and set aside the judgment was made in San Francisco, California, upon the 19th day of August, 1946, and contained a prayer for an order setting aside the divorce decree "and that she be permitted to plead to, or otherwise move against the complaint of plaintiff on file herein."

The affidavit itself sets forth very clearly that the plaintiff, Percy J. Cutting, was not a resident of the Territory

of Alaska at the time he filed the divorce suit or when the decree of divorce was entered. It further clearly sets forth that he knew the post office address of defendant to be No. 71 Castro Street, Hayward, California, and not in Los Angeles as alleged in his affidavit. It further states that no notice whatsoever ever came to defendant prior to April 11, 1946. The grounds set forth in the affidavit are entirely jurisdictional both of the subject matter and of the person of the defendant.

The prayer of the affidavit of Ruby M. Cutting, not being in conformity with the motion to vacate and not being made by her attorney, will be disregarded.

The defendant also filed in the cause an affidavit of merits. She also filed a motion for attorney's fees, costs, temporary support, and maintenance under section 3994, C.L.A., 1933.

In 34 C.J., the following statements are made:

Page 342: "In cases where it is not necessary to show merits, it is not necessary to present or file the proposed answer, as where the judgment is void for want of jurisdiction." (Note 35).

Page 333: "Exceptions to the rule have been recognized in the following classes of cases, in which the party is entitled to have the judgment against him vacated without any showing of merits, namely: Where the judgment attacked is void for want of jurisdiction, (note 62) * * *."

Section 835, page 532: "Where the court undertaking to try an action and render judgment never acquired jurisdiction of the person of defendant, the judgment is entirely void, and may be so held in a collateral proceeding, (note 35) * * *."

Section 836, page 535: "Substituted or Constructive Service. * * * Failure to comply with the provisions of the statute in some essential and vital particular will deprive the court of jurisdiction, and so expose the judgment to collateral impeachment (note 55) * * *."

In Bray et al. v. Germain Inv. Co., 1940, 105 Colo. 403, 98 P.2d 993, 995, the court said: "If under § 50 it is ever necessary to tender or otherwise disclose a prima facie good defense, such showing is not required where application to vacate the judgment is based on lack of service and therefore want of jurisdiction to enter the decree. * * *."

In Beachler et al. v. Ford et al., 1945, Ohio App., 60 N. E.2d 330, the court held (page 338): "If E. T. Ford had based his rights to have such judgments vacated, upon irregularities or errors in the judgments alone the motions themselves would have constituted such appearances as would have the effect of waiving the questions of jurisdiction, but as he based his rights to relief on the additional ground of want of jurisdiction, the motions did not constitute such appearances as would have the effect of waiving the question of the jurisdiction of the court to render such judgments at the time the judgments were rendered."

In Kaffitz v. Clawson, 1944, 134 N.J.Eq. 494, 36 A.2d 215, 216, the court held: "Mistake, accident, surprise or fraud are appropriate grounds for the vacation of judgments or decrees but the grounds of mistake, accident or surprise should be augmented by the disclosure of the probable existence of some meritorious defense. * * * A court of equity will upon its own motion nullify a decree procured through fraud practiced upon it. * * *."

It appears, therefore, that the Court had no jurisdiction of the action as the plaintiff was not a resident of Alaska. It also appears that the Court did not have jurisdiction of the person of the defendant, by reason of the publication and mailing of the summons, and that this lack of jurisdiction of the defendant was not waived by the defendant's motion to vacate the decree, the affidavit of merits, or the motion for attorney's fees, etc.

As the above-mentioned motion for the vacation of the decree was filed upon the 20th day of September, 1946, and the judgment of divorce entered September 26, 1945, an

order, as of date September 20, 1946, should be entered setting aside the decree of divorce entered herein upon the 26th day of September, 1945.